**MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE NO. 190 OF NORTHERN CALIFORNIA, International Association of Machinists and Aerospace Workers by its Affiliated Local Lodge 1546, et al., Plaintiffs,**

v.

**PETERBILT MOTORS COMPANY, Paccar, Inc., Craig Imrie, and Does I through XX, inclusive, Defendants.**

No. C–86–6275 RFP.

United States District Court,
N.D. California.

March 27, 1987.

Jonathan H. Siegel, Boltuch & Siegel, Oakland, Cal., for plaintiffs.

Garry G. Mathiason, Kevin P. Block, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER GRANTING MOTION TO REMAND TO STATE COURT

PECKHAM, Chief Judge.

### INTRODUCTION

The defendants in this case move for dismissal or summary judgment. The plaintiffs move to remand the case to state court. The court denies the defendants' motion to dismiss and grants the plaintiffs' motion to remand.

### BACKGROUND

The plaintiffs in this case are four labor unions representing all of the unionized employees who worked at the Peterbilt Motors Company ("Peterbilt") truck manufacturing facility in Newark, California prior to its closure around October 1, 1986. The plaintiffs were the authorized bargaining agents for the workers at the Newark plant, and, in March 1984, they entered into a collective bargaining agreement that was scheduled to expire February 28, 1987. The defendants in the case are Peterbilt, its owner Paccar, Inc. ("Paccar"), and its operations manager Craig Imrie. In addition to the Newark facility, Peterbilt and Paccar own and operate two other truck manufacturing plants within the United States.

This case arises out of the defendants' conduct prior to the closure of the Newark plant. The plaintiffs allege that, beginning around May 16, 1986, the defendants informed them in unequivocal terms that the Newark plant would be closed unless the plaintiffs offered concessions in the terms and conditions of their employment superior to those offered by the unions at the other two Peterbilt plants. According to the plaintiffs, the defendants had already decided to shut down the Newark plant when these promises were made, and ultimately did shut down the plant despite the fact that the plaintiffs proposed labor cost modifications that complied with the defendants' requests.

Based upon these facts, the plaintiffs filed this complaint in the Alameda County Superior Court. The complaint contains the following state law claims: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) breach of fiduciary duty, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) negligence, (7) bad faith breach of contract, (8) breach of covenant of good faith and fair dealing, and (9) wrongful termination violative of public policy. The defendants removed the case to this court on November 5, 1986.

### DISCUSSION

The defendants contend that this court has jurisdiction over the case because the plaintiffs' ninth cause of action is an "artfully pled" claim under section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and because the remaining causes of action are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq. For

the sake of clarity, the plaintiff's ninth cause of action will be addressed first.

### 1. The Wrongful Termination Claim

■ Although preemption is usually a defense to state law claims, and thus does not provide a basis for removal jurisdiction, removal is appropriate if federal law, in addition to preempting state law, also confers a federal remedy upon the plaintiff. *See Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 930–33 (9th Cir.), *cert. granted,* — U.S. ——, 107 S.Ct. 455, 93 L.Ed.2d 401 (1986); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 (9th Cir.1985); *Scott v. United Motor Mfg., Inc.,* 632 F.Supp. 891, 893 (N.D.Cal.1986). This form of federal removal jurisdiction, known as the "artful pleading" doctrine, requires the court to make "two distinct inquiries, both of which must be satisfied to permit removal of an action to federal court." *Williams,* 786 F.2d at 932. First, the court must determine "whether 'it is apparent from a review of the complaint that federal law provides plaintiff a cause of action to remedy the wrong he asserts he suffered.'" *Id.* at 933 (quoting *Hunter v. United Van Lines,* 746 F.2d 635, 643 (9th Cir.1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985)). Second, if federal law does provide an analogous substitute cause of action, then the court must determine whether the state law cause of action is preempted. *See id.*

■ The plaintiff's ninth cause of action in this case alleges wrongful termination in violation of the public policies of the State of California. The complaint describes the public policies allegedly violated in the following terms:

> In acting towards plaintiff as herein alleged, defendants, and each of them, violated the public policy and express and/or implied stated statutory objectives of the State of California, including but not limited to:
>
> a. Deceit and misrepresentation, C.C. § 1709, 1710.
>
> b. Negligent conduct, C.C. § 1714.
>
> c. The labor law statutes of the State of California, and particularly Labor Code § 923.
>
> d. California Unemployment Insurance Code § 100 in favor of permanent employment as a recognized interest of the State of California.
>
> e. A policy against the arbitrary foreclosing of employment opportunities, in violation of the due process and equal protection clauses of the California Constitution, Art. I § 7.
>
> f. The policy of the State of California is "to foster, promote, and develop the welfare of wage earners of California ... to advance their opportunities for profitable employment." California Labor Code § 50.5.
>
> g. The policy of the State of California mandates that an employer "indemnify employees for losses caused by the employer's want of ordinary care." California Labor Code § 2801.

Complaint ¶ 93.

The defendants contend that the plaintiff's wrongful termination claim was properly removed to this court because there exists an analogous and preemptive federal cause of action in § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a), which provides a federal claim for breach of a collective bargaining agreement. The defendants point out that Articles 4 and 29 of the collective bargaining agreement between the parties permit dismissal of employees only for just and proper cause, and Article 12 requires arbitration of all unjust discharge claims. Because the plaintiffs could submit to arbitration a claim for unjust dismissal, and then sue under § 301, the defendants maintain that there exists a federal claim substantially identical to the plaintiff's state law "wrongful termination" claim. Thus, the defendants argue that the first prong of the *Williams* test is satisfied.

The court is not persuaded by this argument. The California courts have developed two separate and independent limitations on an employer's absolute right to terminate employees. The first limitation prohibits a discharge that "violates funda-

mental principles of public policy." *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). The second limitation is based upon an express or implied agreement "that the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination." *Pugh v. See's Candies*, 116 Cal.App.3d 311, 325, 171 Cal.Rptr. 917 (1981). In this case, the plaintiffs are clearly relying upon the first of these two limitations by alleging that their members were terminated in violation of California's statutory public policies. Although a claim for unjust dismissal under the collective bargaining agreement would provide an analogous and substitute federal claim if the plaintiffs were alleging termination without good cause under state law, it does not provide an analogous cause of action for their public policy claim. Section 301 simply does not provide any remedy for persons discharged in violation of California's statutory public policies, and the plaintiffs therefore have no substitute federal claim available to them. Thus, the first prong of the *Williams* test is not satisfied, and the court concludes that it lacks removal jurisdiction over the wrongful termination claim.[1]

## 2. The Remaining State Law Claims

█ The defendants argue that the remaining causes of action must be dismissed because they are all within the exclusive jurisdiction of the NLRB. According to the defendants, this court may take jurisdiction over a case removed from state court for the limited purpose of dismissing the case because it is preempted by the NLRA and exclusive jurisdiction lies with the NLRB. In support of this proposition, the defendants cite *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928 (9th Cir.), *cert. granted*, —— U.S. ——, 107 S.Ct. 455,

93 L.Ed.2d 401 (1986). There, the Ninth Circuit stated in dictum:

> The NLRA may constitute a fairly unique area of law where, at least in some cases, the determination of federal jurisdiction in the National Labor Relations Board (NLRB) employs the identical analysis required to determine whether a state law claim is preempted.... If the activity underlying a state law claim is "arguably subject" to regulation under sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158, the action is both preempted and falls within the exclusive jurisdiction of the NLRB.... *A federal court may be able to take jurisdiction over a case removed from state court for the limited purpose of determining whether exclusive federal jurisdiction exists in the NLRB.* Thus, the preemption analysis applied under the NLRB should be distinguished from the approach taken with regard to § 301 of the Labor Management Relations Act, although the two provisions may overlap on occasion.

*Id.* at 934 n. 3 (citations omitted; emphasis supplied).

The court is not persuaded by this reasoning. Removal jurisdiction is limited to those cases over which the district courts have original jurisdiction. *See* 28 U.S.C. § 1441(a). Under the removal statute, a federal court must remand to state court any case over which it would not have had original jurisdiction. *See* 28 U.S.C. § 1447(c). Furthermore, it is well established that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). The result advocated here is directly contrary to these basic principles of removal jurisdiction. Having removed the case to this court, the defendants now urge us to dismiss on the ground that both the federal

1. Having found that there exists no substitute federal cause of action for the plaintiff's claim of wrongful termination, we have no occasion to consider whether that claim is nonetheless preempted by the NLRA. The Ninth Circuit has made clear that this question is to be addressed "if, *and only if*" the district court finds that there is an analogous substitute federal claim. *See Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 933 (9th Cir.1986) (emphasis supplied), *cert. granted*, —— U.S. ——, 107 S.Ct. 455, 93 L.Ed.2d 401 (1986).

and state courts lack original jurisdiction because the state law claims are preempted and exclusive jurisdiction lies with the NLRB. However, if this court itself lacks original jurisdiction, then it also has no jurisdiction to dismiss the case after removal, and the case must instead be remanded to state court under § 1447(c). *See* 1A *Moore's Federal Practice,* ¶ 0.169[1] at 680 (2d ed. 1985); *see also id.* ¶ 0.167[7.3] at 492–93 n. 4 (citing cases holding that remand rather than dismissal is appropriate where a case within the exclusive jurisdiction of the NLRB is removed from state to federal court). Thus, we reject the argument that a federal court may exercise removal jurisdiction for the sole purpose of finding that both the federal and state courts lack jurisdiction.

■ The Ninth Circuit has consistently recognized in its NLRA preemption removal cases that the existence of a superseding federal remedy is an absolute prerequisite to the exercise of removal jurisdiction, because otherwise a state law claim cannot properly be "recharacterized" as a federal cause of action over which a federal court would have had original jurisdiction.

> If no federal right is violated by the acts the plaintiffs allege occurred, then no federal question is raised in the complaint and the federal courts are without jurisdiction. The preemption argument then focuses only on the proposition that the state cannot regulate the field, which is a defensive allegation.... Consequently, such an action must be remanded to state court.

*Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 933 (9th Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 455, 93 L.Ed.2d 401 (1986). This reasoning applies equally to NLRA preemption removal cases, and it

would therefore be improper to exercise removal jurisdiction without first determining that there exists a substitute federal claim under the NLRA. For this reason, the court holds that the same analysis applied in LMRA preemption removal cases must be applied in NLRA preemption removal cases. First, we must determine whether "it is apparent" that a "federal right is violated by the acts the plaintiffs allege occurred." If so, then we "must proceed to determine whether the state law cause of action is preempted." *Id.* [2]

■ Two threshold questions merit discussion before turning to the first of the *Williams* inquiries. First, we must determine whether the complaint itself must state a federal cause of action to satisfy the *Williams* test, or whether a court is permitted to look beyond the face of the complaint to ascertain whether a substitute federal remedy exists. Several panels of the Ninth Circuit have implied that a district court is limited in its analysis to the face of the complaint itself. *See Williams,* 786 F.2d at 933 (stating that the substitute federal claim must be "apparent from a review of the complaint"); *Hunter v. United Van Lines,* 746 F.2d 635, 643 (9th Cir. 1984) (same), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985); *Garibaldi v. Lucky Food Stores,* 726 F.2d 1367, 1370 n. 5 (9th Cir.1984) (stating that the substitute federal claim must appear "on the face of the complaint"), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). However, another panel has convincingly rejected this result, holding that the "artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts." *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468,

---

**2.** As a practical matter, any NLRA preemption removal case that satisfies the first prong of the *Williams* test will also satisfy the second. A state law cause of action is preempted by the NLRA if the activity underlying the state law claim is "arguably subject" to regulation under the NLRA. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). If a court determines that the first prong of the *Williams* test is satisfied because the NLRA provides an anals-

gous substitute cause of action for the plaintiff's state law claims, then it would necessarily follow that the activity underlying the state law claims is also "arguably subject" to regulation under the NLRA. Thus, the defendants in this case are correct insofar as they argue that a court need only apply one of the two prongs of the *Williams* test in an NLRA preemption removal case, but they are incorrect in asserting that the prong to be applied is the second rather than the first.

1473 (9th Cir.1984). For this reason, we also conclude that "the court is not bound to consider only the facts pleaded in the complaint but may look elsewhere to ascertain facts that would appear in a 'well-pleaded' complaint." *Id.*

██ The second threshold question to be considered is the degree of certainty required to conclude that there exists a substitute federal remedy. In many cases, the existence of a substitute federal remedy will turn on the resolution of complex factual or legal issues that cannot easily be addressed in a motion to remand. This problem can be alleviated by permitting a district court to consider evidence beyond the face of the complaint, but the court must still be guided by some standard establishing the degree of certainty necessary to recharacterize a state law claim as federal. Although the Ninth Circuit has not addressed this issue directly, the language of several previous opinions is instructive in answering the question.

The Ninth Circuit has clearly indicated its view that the artful pleading doctrine is to be narrowly construed. In *Williams*, the court stated:

> The "artful pleading" doctrine is a narrow exception to the ordinary rules of federal jurisdiction, applying only when "the particular conduct complained of [is] governed exclusively by federal law." *Hunter*, 746 F.2d at 640. This "doctrine is to be invoked only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Salveson v. Western States Bankcard Association*, 731 F.2d 1423, 1427 (9th Cir.1984).

*Williams*, 786 F.2d at 931 n. 1. Furthermore, the Ninth Circuit has also intimated that the doctrine may only apply when the plaintiff has a fraudulent purpose. In *Hunter*, the court stated:

> [The artful pleading doctrine may apply] only when the preemption issue and the question of whether a federal cause of action exists are both so clear cut as to call into question the plaintiff's good faith in asserting the state claim. Certainly, if there is some question as to

whether a state claim has been preempted or whether a federal claim exists, a fraudulent purpose cannot be inferred from the fact that only a state claim was presented. When plaintiff can have a good faith belief that a state claim has not been preempted or that no federal claim exists, he cannot be said, by alleging a state claim to have manifested a fraudulent purpose to defeat removal.

*Hunter*, 746 F.2d at 644 n. 6.

This narrow construction of the artful pleading doctrine is necessary to preserve the long-accepted principle that a plaintiff is generally considered the master of his own complaint. When a plaintiff has both a state and federal cause of action available to him, he is usually entitled to assert only the state claim in state court. The artful pleading doctrine is a narrow exception to this rule designed to prevent the deliberate manipulation of an obvious federal claim to avoid federal court jurisdiction. Because a plaintiff should generally be entitled to assert only a state law claim even if a federal cause of action might also be available, the artful pleading doctrine must be narrowly confined to those situations in which it is patently clear that a federal claim is available. Thus, this court holds that the artful pleading doctrine may not be applied if it is fairly debatable whether there exists a substitute federal cause of action. Furthermore, the burden of proving the existence of a clearly applicable federal claim is on the party seeking to invoke the court's removal jurisdiction.

██ Applying these principles to this case, the court concludes that it is fairly debatable whether there exists a substitute federal cause of action for the plaintiffs' state law claims. The defendants contend that, for the first eight causes of action, there is an analogous federal claim available to the plaintiffs for failure to bargain in good faith in violation of sections 8(a)(5) and 8(d) of the NLRA. However, it is well established that the duty to bargain in good faith is limited to mandatory subjects of bargaining, which are defined in the Act as "wages, hours, and other terms and conditions of employment." 29 U.S.C.

§ 158(d). *See NLRB v. Borg-Warner,* 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958). In *First National Maintenance Corp. v. NLRB,* 452 U.S. 666, 101 S.Ct. 2573, 66 L.Ed.2d 318 (1981), the Supreme Court held that an employer's decision to shut down part of its business for economic reasons does not fall within the scope of the mandatory duty to bargain. *See id.* at 686, 101 S.Ct. at 2584. The Court held that decisions representing a "significant change" in operations were not subject to mandatory bargaining unless they were made for the purpose of replacing discharged employees or moving the operation elsewhere. *See id.* at 687–88, 101 S.Ct. at 2585–86. The Court also made clear that an employer does not subject itself to the mandatory bargaining duty simply by seeking labor cost concessions from a union before closing its operations. *See id.* at 682, 101 S.Ct. at 2582.

On the basis of the pleadings and declarations before the court, we find that the facts of this case are likely to place it squarely within the ambit of the decision in *First National Maintenance.* The decision to shut down the Newark facility was not made simply in order to replace discharged workers or to relocate the plant elsewhere. Although labor costs may have played some role in the plant closure, that in itself would not suffice to trigger the mandatory bargaining duty. *See id.* at 682, 101 S.Ct. at 2582; *Otis Elevator Co.,* 269 N.L.R.B. No. 162, 115 L.R.R.M. 1281 (April 6, 1984) (plurality opinion). On this record, we conclude that the decision to shut down the Newark plant constituted a "significant change in operations," and that the defendants were therefore not obligated to bargain in good faith over the closure. Thus, it is far from clear that there exists a federal cause of action available to the plaintiffs under the NLRA, and

it is not appropriate to invoke the artful pleading doctrine.[3] The court therefore finds that the case has been improvidently removed, and remands it to state court under 28 U.S.C. § 1447(c). Because we conclude that there exists no clearly applicable substitute federal claim, we need not decide whether the state law claims are preempted by the NLRA. *See supra* note 1.

### CONCLUSION

The court grants the plaintiffs' motion to remand the case to state court, and denies the defendants' motion for dismissal. The court denies the plaintiffs' motion for costs because the defendants had a good faith basis in law for their removal petition and for the motion to dismiss.

IT IS SO ORDERED.

---

**3.** In *UAW v. NLRB,* 765 F.2d 175 (D.C.Cir.1985), the court faced an issue similar to that raised here. There, the court held that the employer had not violated § 8(d) by offering to exchange its right to relocate for midterm modifications of the contract, or by deciding to relocate when the union rejected the modification proposals. The court held that the employer had not violated § 8(d) by seeking wage concessions because it had not "required" the union to bargain, and because it had not implemented any unilateral changes in the collective bargaining agreement. The court also found that the management rights clause in the contract permitted the company to relocate its operations. *See id.* at 181–83. The contract at issue here also contains a similar management rights clause.