George C. AUSTIN, III, Myrtis Austin, George C. Austin, IV, Jeffrey Austin, and Thomas J. Austin, minor children by their parent and by their next friend, George C. Austin, III, Plaintiffs,

v.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, Austin Lightfoot, William Gay, Thomas Smith, Paul Mackenzie, and Philip Finnegan, Defendants.

Civ. No. 86–0542–Y.

United States District Court, D. Massachusetts.

Sept. 19, 1986.

David M. Lipton, Lipton & Pemstein, Boston, Mass., for plaintiffs.

Ron Ciardiello, William J. McDonald, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This lawsuit arises out of the 1983 attempt by the defendant New England Telephone and Telegraph Company (the "Company") to discharge the plaintiff, George Austin, III ("Austin"). Although already reinstated with full back pay, Austin believes that his injuries have not yet been fully compensated, and in this suit he and his family seek recovery against the Company under a variety of state law causes of action. While the case presents a number of novel and interesting questions of state law, ultimately this Court must conclude that these questions are not for a federal court to decide. To see why, a brief factual background is necessary.

### I.

Austin is, and was at all times relevant to this case, a member of the Plant bar-

gaining unit at the Company, which is represented by various locals of the International Brotherhood of Electrical Workers, AFL–CIO (the "Union"). The collective bargaining agreement between the Union and the Company that was in effect in January, 1983 provided that covered employees would be discharged only for just cause. In addition, the agreement established a four step grievance mechanism, culminating in arbitration, that was to be used in the event of disagreements as to the interpretation or application of the agreement, or whenever an employee "ha[d], in any manner, been treated unfairly."

On February 7, 1983, the Company notified Austin that it had terminated his employment effective January 3, of that year. Among the reasons given for the discharge were unpermitted absences and a violation of the Code of Business Conduct. Austin grieved the discharge, and the case proceeded to arbitration. On August 13, 1984, the arbitrator ordered Austin reinstated with back pay and seniority. In a supplemental decision dated April 13, 1985, the arbitrator awarded Austin an additional 10% of back pay to compensate him for "other losses while separated from the company."

Austin then brought this lawsuit in the Massachusetts Superior Court for the County of Suffolk. His complaint sought relief for wrongful discharge in violation of public policy (Count I), intentional infliction of emotional distress (Count II), interference with contractual relations (Count III), and discrimination on the basis of handicap (Count IV).[1] The gravamen of Austin's complaint is that he was discharged because he is an alcoholic, which Austin claims constitutes a handicap under state law. Joined as plaintiffs in the suit are Austin's wife and children, all of whom bring their own claims for loss of consortium and intentional infliction of emotional distress.

---

1. Austin later amended his complaint in this Court to add claims under the Constitution of the Commonwealth, the Massachusetts Civil

Rights Act, Mass.Gen.Laws c. 12, §§ 11H and 11I, and for negligent infliction of emotional distress.

On February 13, 1986, the Company removed Austin's case to this court, alleging jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In the Company's view, Austin's claims, although couched in the language of state tort law, were essentially claims for breach of a collective bargaining agreement. The Company then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Company argues that Austin's claims are preempted by § 301 and precluded by the arbitration awards. Austin opposes the motion to dismiss, and moves to remand the entire case to the state court. Austin's position is that none of the state law claims are preempted, and thus this Court is without subject matter jurisdiction.

## II.

Although the parties dispute whether this case ought be remanded or dismissed, they are in agreement that the question of preemption is ripe for review on the merits. The Company argues that this Court should find the state law claims preempted, and thus dismiss, while Austin argues that § 301 does not affect the state law causes of action, and thus the case must be remanded. Neither party addresses this Court's jurisdiction except insofar as it relates to the merits of the preemption issue. In so structuring their arguments the parties have put the cart before the horse, for it is only after this Court's removal jurisdiction is established that it can address the merits of the preemption controversy. *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 7, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983) (hereinafter *Franchise Tax Board*).

■ Under the removal statute, a defendant may remove a state court action if the case falls within the original jurisdiction of the federal district court. 28 U.S.C. § 1441. Where, as here, there is no diversity of citizenship between the parties, the district court's jurisdiction depends on whether the state court action "aris[es] un-der the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Although the "arising under" language of § 1331 is not susceptible of precise definition, in most circumstances an action will be said to arise under the laws of the United States when it appears from the complaint that the plaintiff's right to the relief sought is dependent upon his "establish[ing] both the correctness and the applicability to his case of a proposition of federal law." *Franchise Tax Board, supra* at 9, 103 S.Ct. at 2846 (citation omitted); *accord Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (federal right must be essential element of plaintiff's cause of action). If the "federal question" in a case is raised only by way of a federal defense the jurisdictional statute does not authorize removal. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, — U.S. —, —, 106 S.Ct. 3229, 3231, 92 L.Ed.2d 650 (1986); *Hernandez-Agosto v. Romero-Barcelo*, 748 F.2d 1, 2 (1st Cir.1984).

■ In accordance with the above analysis, a defensive allegation of preemption ordinarily will not suffice to vest the district court with removal jurisdiction. *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 932 (9th Cir.1986). There are exceptions to this general rule, however. Where the removal petition demonstrates that the plaintiff's claims, although couched in the language of state law, are in substance federal claims, the preemptive force of the federal law provides a proper basis for exercising removal jurisdiction. *See e.g., Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). This situation will arise when federal law not only "sets bounds for the operation of state authority," *Franchise Tax Board, supra*, 463 U.S. at 11, 103 S.Ct. at 2847, but also provides a uniform federal cause of action. *Williams v. Caterpillar, supra* at 932. In such a case, any state cause of action that falls within the scope of the federal right is "completely preempte[d]," *Franchise Tax Board, supra*, 463 U.S. at 24, 103 S.Ct. at

2854, and the case necessarily "arises under" federal law. *Id.* at 24, 103 S.Ct. at 2854; *Avco Corp. v. Aero Lodge, supra,* 390 U.S. at 560, 88 S.Ct. at 1237; *Williams v. Caterpillar, supra* at 932.

It is because of this "complete preemption" doctrine that the inquiry here must go beyond the obvious fact that Austin's complaint nowhere mentions federal law. In addition, the Court must ask whether the activity complained of in the complaint is within the scope of the cause of action provided by § 301.[2] If Austin's allegations do state violations of rights protected by § 301, then it is well established that the "pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action," and to provide a proper basis for this Court's removal jurisdiction. *Franchise Tax Board, supra,* 463 U.S. at 23, 103 S.Ct. at 2853; *see also, Avco Corp. v. Aero Lodge, supra,* 390 U.S. at 560, 88 S.Ct. at 1237.

By its terms, § 301 applies only to suits for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). For jurisdiction to lie under § 301 the plaintiff must allege a breach of a duty that arises out of the collective bargaining agreement. *Hayes v. New England Millwork,* 602 F.2d 15, 18 (1st Cir. 1979) (§ 301 permits suit for "failure to comply with the collective bargaining agreement"); *Painting and Decorating Contractors Association v. Painting and Decorating Joint Committee,* 707 F.2d 1067 (9th Cir.1983), *cert. denied,* 466 U.S.

927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984); *see also Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (§ 301 designed to provide uniform results in cases involving "legal consequences ... intended to flow from breaches" of collective agreements). Although Austin's complaint nowhere relies on the terms of the collective bargaining agreement, the Company nonetheless argues that his claims must be recharacterized as arising under § 301.[3]

The Company's position is that all "state law actions for wrongful discharge which are brought by employees [covered] by a collective bargaining agreement" must be recharacterized as § 301 suits. That this argument is incorrect is best demonstrated by comparing the cases on which the Company relies with the case at Bar. In *Price v. United Parcel Service,* 601 F.Supp. 20 (D.Mass.1984), the plaintiff, an employee covered by a collective agreement, alleged state law causes of action for breach of contract and wrongful termination in breach of an implied covenant of good faith and fair dealing. Judge Keeton held that these allegations were "essentially" a § 301 claim for breach of a labor agreement. *Id.* at 23. The court thus granted summary judgment based on the earlier denial of the plaintiff's grievance under the contract mechanism. Similarly, *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468 (9th Cir.1984), involved an attempt by a covered employee to rely on state causes of action for breach of con-

---

**2.** It is important to note that the inquiry is into the scope of the right provided by § 301, not its preemptive force. Although the two areas overlap, it is not necessarily true that they will always be congruent. There may be circumstances in which § 301 will preclude the operation of state law, but not itself provide relief. It would seem that in such a situation the removal statute would not authorize jurisdiction. *See Williams v. Caterpillar, supra* at 935 (removal proper only where federal law displaces state law *and* provides a "superseding remedy.") It is necessary to limit the focus of discussion to the scope of the § 301 cause of action alone in order to avoid falling into the "chicken and egg" trap that would occur here were jurisdiction dependent on the existence of preemption and the authority to examine preemption dependent

on jurisdiction. Because the Court rules that this case was improperly removed, it is without authority to reach the merits of the preemption argument, and expresses no opinion as to whether this is a case where the preemptive force of § 301 is broader than the remedy provided.

**3.** The Company also argues that this Court has original jurisdiction because "the resolution of [the preemption] question may be accomplished only through an examination of federal case law.... Clearly this presents a federal question." This argument was specifically rejected in *Franchise Tax Board* and warrants no further discussion here.

tract and wrongful discharge. The plaintiff's breach of contract claim was based on the employer's policy manual, while his wrongful termination claim was based on an alleged lack of just cause in violation of the collective agreement. The Ninth Circuit held that both causes were properly removed as within the scope of § 301, and that both were preempted by the grievance remedy. *Id.* at 1474. *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348 (9th Cir.1984), also arose out of the discharge of an employee covered by a collective bargaining agreement. The plaintiff there brought suit under California law for retaliatory discharge, wrongful discharge, and intentional infliction of emotional distress. After ruling that the retaliatory discharge claim was preempted by the National Labor Relations Act,[4] the court held that the wrongful discharge claim was governed exclusively by § 301. The court reasoned that because plaintiff had alleged no conduct which contravened public policy, the only wrongful discharge remedy provided by California law was for breach of an implied contractual covenant. *Id.* at 1350.

[redacted] In stark contrast to these three cases stands Austin's suit here. Austin does not rely on any express or implied contractual provisions. In fact, he specifically eschews any contractual remedies, and readily concedes that any rights he had under the agreement were merged into the arbitration awards. Austin's claim as to Count I is that the common law of Massachusetts imposes upon the Company a duty not to discharge its employees on the basis of handicap.[5] Regardless of whether Austin is correct in his interpretation of state law, it is clear that the duty which he alleges has been breached arises wholly "independent of any right established by contract." *Allis-Chalmers v. Lueck, supra,* 104 S.Ct. at 1912. No inquiry into whether the discharge was "just" within the meaning of the collective bargaining agreement is necessary to determine whether the Company breached the duty allegedly imposed by state law. *Cf. id.,* 105 S.Ct. at 1910 ("Clearly, § 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law"). Thus, the common law cause of action for discrimination on the basis of handicap does not fall within the scope of the right provided by § 301, and is therefore not within this Court's original jurisdiction. This reasoning is equally applicable to the claims for handicap discrimination based on Article CXIV of the Amendments to the Massachusetts Constitution and Massachusetts statutory law.[6]

[redacted] The Company relies heavily on *Buscemi v. McDonnell Douglas Corp., supra,* for the proposition that claims for intentional infliction of emotional distress that arise out of the discharge of an employee covered by a collective bargaining agreement must be recharacterized as § 301 suits. *Buscemi* does not so hold. As already noted, *Buscemi* did not involve a question of § 301 removal jurisdiction because there was diversity of citizenship between the parties. Addressing the merits of the preemption issue, that court interpreted Buscemi's claim as simply alleging a type of injury (i.e. emotional distress) that resulted from his dismissal without just cause. *Id.* at 1352. The court thus concluded that the "allegations d[id] not support a tort claim under state law for intentional infliction of emotional distress." *Id.* at 1352. Consequently, all that remained was a claim for contract damages that was preempted. Nothing in *Buscemi* suggests

4. The *Buscemi* court moved to the merits of the preemption arguments without discussing the propriety of § 301 removal because diversity of citizenship existed.

5. The fact that the state may label this cause of action wrongful discharge in violation of public policy is, of course, irrelevant. The Company has too quickly assumed that once a plaintiff invokes the magic words "wrongful discharge" § 301 will cover the claim presented.

6. *Cf. Cronan v. New England Telephone and Telegraph Co.,* No. 86–0242, slip op. at 13 (D.Mass. April 11, 1986), where the court, without addressing the propriety of removal, held that § 301 does not preempt state law claims for handicap discrimination.

that Austin's complaint is removable to this Court. Here again, Austin's claim is that, regardless of whether the collective agreement was violated, the egregious manner of the discharge intruded on interests protected independently by state tort law.[7] Because such a claim does not support this Court's original jurisdiction, it would not be appropriate to engage in the type of searching inquiry on the merits found in *Buscemi.* The *Buscemi* court recharacterized the intentional infliction of emotional distress claim only after finding the complaint failed to state a claim under California tort law. Because this Court is without subject matter jurisdiction it cannot similarly begin its preemption inquiry by examining the merits of the Massachusetts tort claim for outrageous conduct. *See Price v. United Parcel Service, supra* at 24 (where Judge Keeton, after finding contract claims preempted, remanded claims of intentional and negligent infliction of emotional distress for lack of subject matter jurisdiction.)

The Company's argument that *Allis-Chalmers v. Lueck, supra,* supports the propriety of removal is off the mark. To begin with, *Lueck* is a case that worked its way to the Supreme Court through the Wisconsin state courts. In discussing the scope of § 301 preemption the Court never addressed whether the case would have been within a federal district court's original jurisdiction. Moreover, *Lueck* is distin-

guishable on its facts. In *Lueck* the plaintiff brought a Wisconsin tort law suit for bad faith delay in making disability payments allegedly due under the terms of a collective bargaining agreement. The Court's ultimate conclusion, that § 301 preempted the state cause of action, was based on a detailed analysis of the nature of the state right provided, and its relationship to rights implied in the contract under federal law. That is precisely the type of ultimate inquiry that *Franchise Tax Board* instructs the Court to avoid until jurisdiction is established. Here, none of Austin's state claims appear from the complaint to arise as a consequence of rights created in the collective bargaining agreement. Essentially, Austin's complaint is that the Company breached an independent state law duty to ignore his handicap.[8] Such a claim is not one for which § 301 provides a cause of action.

The *Lueck* Court's finding of preemption was also influenced by the need to preserve the primacy of arbitration in "our system of industrial self government." *Allis-Chalmers Corp. v. Lueck, supra,* 105 S.Ct. at 1914 (citation omitted); *see also id.* at 4467 ("The parties have agreed that a neutral arbitrator will be responsible, *in the first instance,* for interpreting the meaning of their contract. Unless this suit is preempted, their federal right to decide who is to resolve *contract disputes* will be lost" [emphasis added]). Unlike Mr.

---

**7.** That there are indeed two separate interests at stake here is perhaps best demonstrated by the following hypothetical. Employer decides to fire Employee because Employee uses products of Employer's competitor. The way Employer effectuates the discharge is by sending goons to Employee's home to terrorize Employee and his family to the point that Employee will "voluntarily" quit. Employer's *reason* for the discharge most likely does not constitute just cause under Employer's collective bargaining agreement with Employee's union, and thus § 301 provides a cause of action for that contractual breach. But even if Employee elects not to sue on the contract, he still has an independent state law claim based on the *manner* the discharge was carried out. The state law claim is wholly outside any right arising out of the contract. This is true even if the agreement expressly or impliedly prohibited terrorizing employees. Certainly the union and Employer cannot strip

employees of the protections of state law merely by restating the obligations of state law in the collective bargaining agreement. *See Allis-Chalmers v. Lueck, supra* at 4465 (§ 301 does not "give the substantive provisions of private agreements the force of federal law").

**8.** That Austin's claims against the individual defendants for interference with contractual relations do not "arise under" § 301 is clear enough to merit little discussion. The individual defendants are not signatories to any labor agreements with Austin or his Union. The Company cites no case in which § 301 was found to support jurisdiction over an employee's claim against non-signatories to a labor agreement. For this same reason, the claims of Austin's family are not within the Court's original jurisdiction.

Lueck, Austin exhausted his contractual remedies before filing suit. To that extent *Lueck* militates against recharacterizing this as a § 301 action.

It is important to summarize what the Court has and has not held here. The Court's ruling is simply that neither Austin's complaint nor the preemption defense asserted by the Company is sufficient to invoke this Court's removal jurisdiction. Such a ruling is not determinative of the merits of the preemption defense. Austin is pursuing certain state law remedies which he believes were not merged into the arbitration. While he may ultimately be wrong on this point, the proper forum for resolving this dispute is the one he originally chose—the Massachusetts Superior Court. It is for the Superior Court to determine whether Austin has stated claims under Massachusetts law, and if so whether application of the law of the Commonwealth under these circumstances will interfere with the federal interests embodied in § 301. Refusing the Company an opportunity to litigate in this court in no way limits its right to present federal defenses in state court.

■ The preemption doctrine behind § 301 is concerned with promoting the supremacy of federal law, not federal courts. *Cf. Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (holding that state courts have concurrent jurisdiction over § 301 claims). While the strong federal interest in uniformity compels the conclusion that Congress intended § 301 to preempt all inconsistent state regulation, there is no similar interest pointing to the conclusion that allegations of § 301 preemption are sufficient to vest the federal district courts with removal jurisdiction. A state law claim ought not be recharacterized as a § 301 suit for jurisdictional purposes simply because the plaintiff's employment was covered by a collective bargaining agreement. The jurisdictional inquiry more properly focuses on whether the plaintiff seeks to vindicate a right arising out of the collective agreement. If not, then there is no

federal question jurisdiction and it is left to the state courts to determine whether the action is nonetheless within the scope of § 301 preemption. *Williams v. Caterpillar Tractor Co., supra* at 937.

In accordance with all that has just been said, the case is remanded to the Superior Court of Massachusetts as improperly removed.

SO ORDERED.